WISCONSIN ELECTRIC POWER COMPANY, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and the Secretary of Labor, Respondents.

No. 76–2166.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1977.

Decided Dec. 14, 1977.

As Corrected on Denial of Rehearing Jan. 6, 1978.

T. Michael Bolger, Mary Pat Koesterer, Milwaukee, Wis., for petitioner.

William G. Staton, Nancy L. Southard, Attys., U.S. Dept. of Labor, Allen H. Sachsel, Dept. of Justice, Washington, D.C., for respondents.

Before PELL, SPRECHER and TONE, Circuit Judges.

TONE, Circuit Judge.

The Occupational Safety and Health Review Commission found that Wisconsin Electric Power Company had committed a serious violation of § 5(a)(1), 29 U.S.C. § 654(a)(1), of the Occupational Safety and Health Act, 84 Stat. 1590 (1970), by failing to protect employees working on the ground from accidental contact with an energized truck working on high-tension lines, thus not complying with 29 C.F.R. § 1926.-955(a)(6)(ii). In this review proceeding under § 11(a), 29 U.S.C. § 660(a), we order enforcement.

On September 5, 1973, Harry Schreiner, a lineman employed by the company, was electrocuted while a member of a three-man crew assigned to raise three overhead primary electrical wires from old to new poles at a worksite in Brookfield, Wisconsin. He, another lineman, and the crew foreman were working with two of the company's trucks, which were equipped with booms for lifting men and materials. One was an "electric line truck," a multi-purpose truck to which was attached a utility trailer containing miscellaneous equipment. The second truck was a "bucket truck" with a large bucket attached to its boom.

The high energy wire to be raised would be attached to the boom of the electric line truck and manually guided by one of the linemen, standing in the bucket of the bucket truck. The other lineman would operate the boom of the electric line truck, leaving the foreman free to supervise from the ground. In the course of raising the wires one by one, one or both booms could come in contact with one of the other stationary wires, in which event the entire piece of equipment would be energized unless there was effective insulation.

Schreiner was the lineman who operated the electric line truck controls. On the day in question he became ill, and the foreman took his place. Although warned by the foreman to stay away from the equipment, Schreiner was touching the trailer attached to the electric line truck when the truck's boom touched an overhead primary wire. This energized the equipment, and Schreiner was electrocuted. It was stipulated that neither truck was grounded or barricaded.

An OSHA compliance officer, after inspecting the worksite, cited the company for a serious violation of 29 C.F.R. § 1926.-955(a)(6)(ii), and hence the Act, for failing either to ground or to barricade the truck. Following a timely contest of the citation pursuant to § 10(c) of the Act, 29 U.S.C. § 659(c), the Secretary filed a formal complaint before the Review Commission. The company denied the allegation. The case was submitted on stipulated facts to an administrative law judge, who vacated the citation. Discretionary review under § 12(j), 29 U.S.C. § 661(i), was granted by the Commission, which, with one member dissenting, reversed the ALJ's decision, found the company in serious violation of the Act for failure to comply with § 1926.-955(a)(6)(ii), and assessed a $600 penalty.

The company argues that the applicable section of the regulations was not § 1926.-955(a)(6)(ii) but § 1926.952(c)(2), which was complied with. An alternative contention is that the regulations are so vague and confusing that the company could not reasonably have foreseen the applicability of § 1926.955(a)(6)(ii), and they therefore violate the due process clause of the Fifth Amendment.

The regulations that govern the work in question here are found in subpart V, entitled "Power Transmission and Distribution," of the Safety and Health Regulations for Construction, 29 C.F.R. § 1926.950 *et seq.* Subpart V begins with a section prescribing general standards, § 1926.950, and then goes on to prescribe standards on tools and protective equipment, § 1926.951, and mechanical equipment, § 1926.952; on material handling, § 1926.953; and on grounding, § 1926.954. Then follow three sections dealing with types of construction work, work on overhead lines, § 1926.955, work on underground lines, § 1926.956, and work in energized substations, § 1926.957. Other sections not relevant here, §§ 1926.958 and

1926.959, and a definitional section, § 1926.-960, complete the subtitle. Not surprisingly, the sections on equipment, which focus on the physical condition of the equipment and the manner in which it should be operated, overlap to some extent with the sections on types of construction work, which focus on how the work is to be conducted. The provision the company contends is applicable appears in the section dealing with mechanical equipment, § 1926.952; the provision the Secretary asserts is in the section dealing with work on overhead lines, § 1926.955.

The provision on which the company relies and its context are as follows:

§ 1926.952 *Mechanical equipment.*

.        .        .        .        .

(c) *Derrick trucks, cranes and other lifting equipment.* (1) All derrick trucks, cranes and other lifting equipment shall comply with Subpart N and O of this part [not here applicable] except:

.        .        .        .        .

(ii) Derrick truck (electric line trucks) shall [the rest is not relevant]   .    .    ..

(2) With the exception of equipment certified for work on the proper voltage [not argued to be the case here], mechanical equipment shall not be operated closer to any energized line or equipment than the clearances set forth in § 1926.950(c) unless:

(i) An insulated barrier is installed between the energized part and the mechanical equipment, or

(ii) The mechanical equipment is grounded, or

(iii) The mechanical equipment is insulated, or

(iv) The mechanical equipment is considered as energized.

The company asserts, and we shall assume, that methods (i) and (iii) were being used when Schreiner was killed.

* "Electric line truck" is defined in the definitional section to mean

a truck used to transport men, tools, and material, and to serve as a traveling workshop for electric power line construction and

The provision on which the Secretary relies and its context are as follows:

§ 1926.955 *Overhead lines.*

(a) *Overhead lines.* (1) When working on or with overhead lines the provisions of paragraph (a)(2) through (8) of this section shall be complied with in addition to other applicable provisions of this subpart.

.        .        .        .        .

(5)   .    .    .

(ii) Equipment and machinery operating adjacent to energized lines or equipment shall comply with § 1926.952(c)(2).

(6)   .    .    .

(ii) Lifting equipment shall be bonded to an effective ground or it shall be considered energized and barricaded when utilized near energized equipment or lines.

Neither of the requirements of (a)(6)(ii) was met on the occasion of Schreiner's fatal accident.

Arguing that § 1926.952(c)(2) applies because compliance with that standard was directed by § 1926.955(a)(5)(ii), the company asserts that both cited provisions refer to "derrick trucks," which are defined as "electric line trucks" in § 1926.952(c)(1)(ii).* It argues further that "lifting equipment," the term used in § 1926.955(a)(6)(ii), which is not defined in the regulations, "presumably means A-frames, cranes and the like." Somewhat inconsistently, the company goes on in its next argument to assume that "lifting equipment" is broad enough to include the electric line truck, the argument being that the Commission erroneously relied on a general standard when a specific standard is applicable. *Diamond Roofing Co. v. OSHA,* 528 F.2d 645 (5th Cir. 1976), cited in support of the principle that the more specific controls is not quite in point, but the principle may be conceded.

maintenance work. It is sometimes equipped with a boom and auxiliary equipment for setting poles, digging holes, and elevating material or men.

§ 1926.960(q).

Which of the two standards is the more specific in this case depends upon whether the focus is on the kind of equipment or the kind of use to which the equipment is put. Section 1926.952(c)(2) does refer to electric line trucks, as well as other lifting equipment, and it in terms applies whenever the equipment is operated for any purpose within a specified distance of any energized line or equipment. Section 1926.955, however, including paragraph (a)(6)(ii), applies "[w]hen working on or with overhead lines," paragraph (a)(1). Although paragraph (a)(5)(ii) incorporates § 1926.952(c)(2) by reference, it does so with respect to "[e]quipment and machinery," which is less specific than "[l]ifting equipment," the subject of (a)(6)(ii). We think, despite the company's assertion to the contrary in one of its arguments, that an electric line truck is clearly a kind of lifting equipment. See § 1926.952(c) ("derrick trucks [which means 'electric line trucks,' paragraph (c)(ii)], cranes and *other* lifting equipment" [emphasis supplied]). When these several provisions are read together then, they can reasonably be interpreted to mean that when lifting equipment (which term includes an electric line truck) is used in working on or with overhead lines, it must be grounded or barricaded, as required by § 1926.955(a)(6)(ii); when other kinds of equipment and machinery are so used, the more lenient provisions of § 1926.-952(c)(2) apply; and, when the work is not on overhead lines, and lifting equipment is operated near any energized line or equipment, the latter provision also applies. The rationale advanced by the Secretary for this interpretation, *viz.*, that when lifting equipment is used in working on or with overhead lines it is likely to become energized despite insulation or an insulated barrier, and grounding or barricading the equipment is necessary to protect employees on the ground, is reasonable. In fact, the danger described is illustrated by what happened in this case.

Congruent determinations by the Secretary and the Commission that the standards are applicable are entitled to great weight. *Budd Co. v. OSHRC*, 513 F.2d 201, 204–205 (3d Cir. 1975); *Clarkson Construction Co. v. OSHRC*, 531 F.2d 451, 457 (10th Cir. 1976). In this case, moreover, those determinations seem to us to be correct.

Revision of the regulations by any competent draftsman would greatly improve their clarity, but they are not, in our opinion, incomprehensibly vague, and the company's constitutional argument must therefore be rejected. We have considered the company's other contentions and find them to be without merit.

ORDER ENFORCED.

PELL, Circuit Judge, dissenting.

Wisconsin Electric Power Company has challenged here the order of the Review Commission on two principal grounds, one of which properly could be termed substantive and the other procedural. Because I disagree with the resolution by the majority of both issues, I respectfully dissent.

As to the substantive issue, the dissenting opinion of Commissioner Moran sets forth what appears to me to be the correct resolution and I adopt his opinion as my own for the purpose of this dissent. Because his opinion is not published in a generally reported form, I herewith set it forth:

MORAN, Commissioner, Dissenting:

My review of the evidence convinces me that respondent complied with 29 C.F.R. § 1926.952(c)(2), the applicable standard, and that complainant erred in citing respondent for a violation of a standard which did not apply, 29 C.F.R. § 1926.955(a)(6)(ii). An exposition of the applicable parts of the standards as they appear to an employer trying to determine what he must do to comply with the Act will amply demonstrate the validity of this position.

The equipment used by respondent at the worksite is defined by complainant in 29 C.F.R. § 1926.960(q) as an electric line truck. It was stipulated by the parties that respondent was operating such a truck adjacent to energized lines.

From 29 C.F.R. § 1926.952(c)(1)(ii), we then learn that electric line trucks are also referred to as derrick trucks. From the standard that immediately follows, 29 C.F.R. § 1926.952(c)(2) which respondent contends is applicable, we learn that four alternative safety options are sanctioned when derrick trucks, cranes, or other lifting equipment is operated adjacent to energized lines. The pertinent portions of section 1926.952(c) are as follows:

"(c) Derrick trucks, cranes and other lifting equipment.

(1) All derrick trucks, cranes and other lifting equipment shall comply with Subpart[s] N and O of this part except:

\* \* \* \* \* \*

(ii) Derrick trucks (electric line trucks, shall not be required to comply with § 1926.950(a)(7)(vi) . . .

(2) With the exception of the equipment certified for work on the proper voltage, mechanical equipment shall not be operated closer to any energized line or equipment than the clearances set forth in § 1926.950(c) unless:

(i) An insulated barrier is installed between the energized part and the mechanical equipment, *or*

(ii) The mechanical equipment is grounded, *or*

(iii) The mechanical equipment is insulated, *or*

(iv) The mechanical equipment is considered as energized." (Emphasis added.)

Any doubt that the four safety options enumerated above are also sanctioned when working adjacent to overhead lines is eliminated by section 1926.955(a)(5)(ii), pertaining to "Overhead lines." It provides:

"Equipment and machinery operated adjacent to energized lines or equipment shall comply with § 1926.-952(c)(2)."

Section 1926.955(a)(6)(ii), the standard the Commission has found respondent in violation of, immediately follows the

above direction to look to 29 C.F.R. § 1926.952(c)(2) to find out what must be done when machinery is being operated adjacent to overhead lines.

Complainant conceded that respondent complied with § 1926.952(c)(2). It was stipulated that respondent took all reasonable efforts to see to it that its employees complied with this standard. In a safety directive which respondent had issued to its employees about the requirements of § 1926.952(c)(2), respondent had instructed its employees that they could bond the truck to an effective ground, barricade it, insulate the line, or use an insulated boom or derrick. Respondent's crew had chosen to proceed under (i) above in that they installed an insulated barrier (i.e., line hose) between the energized part (the line) and the mechanical equipment (the electric line truck) and (iii) in that the boom was equipped with a fiber glass extension. These were choices which complainant himself offered to them under 29 C.F.R. § 1926.952(c)(2).

Although respondent's employees sought to comply both with this standard and respondent's directives, they did so negligently and permitted the metal portion of the mechanical equipment on the truck to come into contact with an uninsulated portion of the energized line, thereby energizing the truck and trailer. Respondent however cannot be charged with this negligence because the record shows, and complainant stipulated, that respondent took all reasonable measures to ensure that its employees were aware of this standard. This is all the Act requires. *See Horne Plumbing and Heating Company v. OSAHRC*, 528 F.2d 564 (5th Cir. 1976); *Cape and Vineyard Division of New Bedford Gas and Edison Light Company v. OSAHRC*, 512 F.2d 1148 (1st Cir. 1975); *Secretary v. Standard Glass Company, Inc.*, 1 OSAHRC 594 (1972).

The majority found respondent in violation because it did not ground or barricade when these are but two of the four options that were offered to respondent

in 29 C.F.R. § 1926.952(c)(2). This has been done despite the fact that these four options were offered to respondent by virtue of the type of equipment it was using, an electric line truck, and by virtue of the type of work it was doing with this truck: work on overhead lines.

Thus, by finding respondent in violation of 29 C.F.R. § 1926.955(a)(6)(ii) which pertains to lifting equipment, a term that is not defined in the regulations, and which could mean A-frames, cranes, etc., my colleagues have, contrary to their assertion in footnote 13, found respondent in violation of a general standard when a specific standard is applicable. This is a departure from long-standing Commission precedent. *Secretary v. Sun Shipbuilding and Drydock Company*, 4 OSAHRC 1020, 1021 (1973). It is bad enough that an employer must plod through this confusing morass of regulations to ascertain what he must do to comply with the Act. *See Diamond Roofing Co. v. OSAHRC*, 528 F.2d 645, 649 n. 9 (5th Cir. 1976). But it is totally unjust when an employer who has done so and found the applicable regulation is then told that another regulation is controlling.

[Footnote and final paragraph, not here applicable, omitted.]

Presumably utility companies can in the future comply with the requirements as now enunciated by the Commission and as approved by this court even if such companies may not understand how the requirements were arrived at by reading the OSHA standards. Because of that fact the present case might appear not to be of major significance, a status which I think it does have because of its constitutional due process violation aspect. A reading of the various briefs and decisions concerned with the effort to find clarity in the standards here under review aptly illustrates the necessity that in this area of governmental regulation of business, those subject to the regulations should be able to comprehend and implement standards. Here it was almost an impossibility to do so. The administrative law judge used one approach.

Two Commissioners found one subsection of the standards applicable and the third Commissioner, disagreeing, found another subsection applicable with which the petitioner had fully complied. Commissioner Moran properly, in my opinion, characterized the standards as a "confusing mass of regulations." Nevertheless, the majority opinion in part finds support for its position in the congruent administrative determinations of the applicability of the standards. I have difficulty in ascertaining real congruity in view of the above diverse constructions at the administrative level. With all due respect to the majority opinion, the mere tracking of the effort to wend its way through the paludal jungle of definitions tagged with lengthy alphabetical and numerical symbols should be sufficient demonstration in itself that the standards were so impossibly vague, indefinite, and confusingly juxtaposed as to deprive the petitioner of its constitutional due process rights.

No matter how worthwhile the purpose of regulations may be, and the propriety here is not being challenged, they should give fair notice of what conduct is proscribed or prescribed for employers. That clarity scarcely appears to exist when at both the administrative and judicial level conflicting interpretations can be said reasonably to exist. Neither the safety of employees nor the national industrial strength can be preserved by restrictive regulations which are not reasonably comprehensible.

The command of the United States Constitution is that due process requires a statute penalizing conduct to give fair notice of what conduct is required or prohibited, or it is unenforceable for indefiniteness. *Buckley v. Valeo*, 424 U.S. 1, 77, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

A statute or regulation which forbids or compels the doing of an act in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application violates the constitutional requirements of due process and cannot stand. *United States v. Tandaric*, 152 F.2d

3 (7th Cir. 1945); *Cicero v. Olgiati*, 410 F.Supp. 1080, 1093 (S.D.N.Y. 1976).

As the court in *Diamond Roofing Co. v. Occupational Safety and Health Review Commission*, 528 F.2d 645, 649 (5th Cir. 1976), noted, an employer, like any other private citizen, is entitled to fair notice in dealing with his government:

> Like other statutes and regulations which allow monetary penalties against those who violate them, an occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires, and it must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents.

Therefore, the ultimate question which must be asked in determining whether a statute or regulation is unconstitutional for vagueness is whether it fails to give fair notice to a person of ordinary intelligence that it proscribes given conduct. *Bence v. Breier*, 501 F.2d 1185 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975). In *Cape and Vineyard Division of New Bedford Gas and Edison Light Company v. Occupational Safety and Health Review Commission*, 512 F.2d 1148 (1st Cir. 1975), an employer was cited for failing to require employees to use "necessary protective equipment," following the death, by electrocution, of one of its employees. The court found the OSHA standard, standing alone, was too vague to be constitutionally enforced. In so doing the court wrote, at 1152:

> A regulation without ascertainable standards . . . does not provide constitutionally adequate warning to an employer unless read to penalize only conduct unacceptable in light of the common understanding and experience of those working in the industry. *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974).

Both the history of the disagreements at all levels of this litigation and the efforts to reconcile conflicting and ambiguous language demonstrate, in my opinion, beyond peradventure that the regulations here under question do not pass constitutional muster. When a regulation is so internally inconsistent that the majority opinion upholds it despite recognizing that one part focuses on the manner of operation and another section focuses on conduct of the work, two phrases in essence relating to how the job is to be done, it appears to me it is time for the court to send the administrative agency back to the drafting room so that affected employers will not have to choose at their peril which part is to control their safety efforts.

Finally I regret noting that the majority opinion adverts to the fact that the danger described is illustrated by what happened in this case. Hindsight should not be a criterion in the resolution of OSHA cases or in determining that an employer has violated an incomprehensible standard of conduct. It is sufficient to note that the administrative law judge factually determined that the accident in question occurred because of a wilful and wanton violation of the standard by the employer's supervisor without fault on the part of the employer.