**BETHLEHEM STEEL CORPORATION, Petitioner,**

v.

**Raymond E. DONOVAN, Secretary of Labor, Respondent.**

No. 83–1381.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1983.

Decided Feb. 28, 1984.

Warren M. Davison, Baltimore, Md. (Earle K. Shawe, Leslie R. Stellman, Shawe & Rosenthal, Baltimore, Md., on brief), for petitioner.

Andrea C. Casson, U.S. Dept. of Labor, Washington, D.C. (Francis X. Lilly, Deputy Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health; Dennis K. Kade, Counsel for Appellate Litigation, Washington, D.C.; Marshall H. Harris, Regional Sol., Philadelphia, Pa., on brief), for respondent.

Before WIDENER and HALL, Circuit Judges, and HOFFMAN,* District Judge.

K.K. HALL, Circuit Judge:

Bethlehem Steel Corporation ("Bethlehem") petitions the Court pursuant to Section 11(a) of the Occupational Safety and Health Act (the "Act"), 29 U.S.C. § 660(a), for review of an order of the Occupational Safety and Health Review Commission ("Commission"). In this order the Commission found that Bethlehem had violated the provisions of 29 U.S.C. § 654(a)(2) and a regulation promulgated thereunder by the Occupational Health and Safety Administration ("OSHA"), 29 C.F.R. § 1915.-33(c)(1).[1] The regulation requires employers to protect employees performing welding operations in enclosed spaces on surfaces covered with a toxic preservative coating. We conclude that the Commission's interpretation of the regulation at

---

* Honorable Walter E. Hoffman, United States District Judge for the Eastern District of Virginia, sitting by designation.

1. This regulation, 29 C.F.R. § 1915.33(c)(1), is now found at 29 C.F.R. § 1915.53(d)(1). In April, 1982, the standards that were previously published at 29 C.F.R. Parts 1915, 1916, and 1917, were consolidated, revised, and promulgated as a new 29 C.F.R. Part 1915, Occupa-tional Safety and Health Standards for Shipyard Employment. 47 Fed.Reg. 16984–17013 (April 20, 1982). In this opinion we will refer to the previous designations for the regulations formerly published in Part 1915, Safety and Health Regulations for Ship Repairing, which were in effect at the time Bethlehem was cited for the violation at issue in this case.

issue in this case is controlling and that substantial evidence supports the Commission's finding that Bethlehem violated the regulation's standard. We, therefore, affirm.

## I.

Bethlehem operates a shipyard at Key Highway in Baltimore, Maryland, where it employs approximately 1,000 workers. During March and April, 1978, some of these employees were engaged in welding operations in cargo tanks aboard the SS ESSO PHILLIPINE, a crude oil tanker that was berthed for repairs at the Key Highway shipyard. The repair work involved "burning" out old steel plates and welding new plates in their place. Both the old and the new steel plates were coated with Rust-Ban 191, an inorganic zinc coating used to control corrosion on steel surfaces.

The Material Safety Data Sheet, prepared by the manufacturer of Rust-Ban 191, lists the product under the heading "Paints, Preservatives, and Solvents," states that it contains 80% zinc, and recommends employee protection in the form of respirators and masks. Bethlehem possessed a copy of this document.

In the course of replacing the steel plates, Bethlehem employees performed "hot work"[2] directly on the Rust-Ban 191 coating. Tests conducted by Bethlehem's industrial hygienist revealed that, as a result of these operations, measurable concentrations of zinc oxide fumes were released into the surrounding work area. The cargo tanks were mechanically ventilated by fans and, during part of the time "hot work" was being performed, Bethlehem provided fume-filter cartridge respirators for use by the employees. At no time, however, were air-line respirators (i.e. those having a source of air independent from the work area) made available.

After receiving a complaint that some employees claimed they had experienced flu-like symptoms while performing the welding and burning operations,[3] an OSHA compliance officer conducted a workplace inspection on July 12, 1978. At the time of the inspection, repairs to the vessel had been completed and the oil tanker had already been returned to service. Several employees, however, were interviewed and based on information obtained from these interviews, the Secretary of Labor cited Bethlehem for violating Section 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2),[4] and for failing to comply with 29 C.F.R. 1915.33(c)(1). This regulation provides in pertinent part as follows:

§ 1915.33 *Welding, cutting and heating in way of preservative coatings.*

\*　　\*　　\*　　\*　　\*　　\*

(c) *Protection against toxic preservative coatings.* (1) In enclosed spaces all surfaces covered with toxic preservatives shall be stripped of all toxic coatings for a distance of at least 4 inches from the area of heat application or the employees shall be protected by air line respirators meeting the requirements of § 1915.82(a).

Bethlehem contested the OSHA citation and the matter was heard initially by a Commission administrative law judge (ALJ). The ALJ found that Rust-Ban 191 was a preservative coating within the meaning of 29 C.F.R. § 1915.33(c), but vacated the citation on the ground that the Secretary had failed to show that Bethlehem's employees were exposed to toxic concentrations of zinc oxide under the standard set forth in 29 C.F.R. § 1910.1000(a)(2), Table Z–1.[5]

2. Under OSHA regulations, "hot work" includes both welding and burning. 29 C.F.R. § 1915.2(*o*).

3. The flu-like symptoms, which the employees complained of, included nausea, chills, headaches, bronchial and chest cramps, and sore throats. The symptoms are compatible with a condition known as metal fume fever.

4. 29 U.S.C. § 654(a)(2) requires employers to "comply with occupational safety and health standards promulgated under this chapter."

5. According to the standard at 29 C.F.R. § 1910.1000(a)(2), Table Z–1, zinc oxide is a toxic substance in concentrations exceeding an eight-hour time-weighted average of 5 milligrams per cubic meter of air (5 mg./M[3]). This

Following the Secretary's petition to the full Commission for review of the ALJ's decision, a majority of the three-member Commission issued an order reversing the ALJ and assessing a penalty of $300.00 against Bethlehem for violation of 29 C.F.R. § 1915.33(c)(1). The Commission majority rejected Bethlehem's argument that the Secretary must show the presence of zinc oxide fumes in excess of the OSHA exposure limit in Table Z–1 in order to establish a violation of § 1915.33(c). The Commission concluded that Rust-Ban 191 is a toxic preservative coating within the meaning of the cited standard and that the regulation automatically applies whenever employees weld in enclosed spaces on surfaces coated with that substance. Bethlehem petitions this Court for review of the Commission's order.

## II.

On appeal, Bethlehem contends that the Commission's decision is erroneous because Rust-Ban 191 is (1) not a preservative coating and (2) not toxic until it exceeds an eight-hour time-weighted average of 5 milligrams of zinc oxide fumes per cubic meter of air (5 mg./M $^3$), the threshold limit value or TLV for zinc oxide. We disagree and conclude that the Commission's finding that 29 C.F.R. § 1915.33(c) is applicable to this case is both reasonable and supported by substantial evidence.

Bethlehem initially contends that it should not have been cited for a violation of 29 C.F.R. § 1915.33(c) at all, because, according to a marine chemist who testified as an expert witness before the ALJ, Rust-Ban 191 is not a "preservative" coating but merely a zinc-bearing metallic coating. Consequently, Bethlehem submits that a different regulation, 29 C.F.R. § 1915.-31(c)(1),[6] which merely requires that ade-

quate ventilation be provided, is controlling in this case.

■ Both the ALJ and the Commission rejected Bethlehem's argument and concluded that Rust-Ban 191 is a preservative coating subject to the standard set forth at 29 C.F.R. § 1915.33(c). The record demonstrates that the Material Safety Data Sheet specifically lists Rust-Ban 191 under the heading "Paints, Preservatives, and Solvents," rather than under the heading "Alloys and Metallic Coatings." As required by 29 C.F.R. § 1915.57(b) and (c), this document was in Bethlehem's possession. Accordingly, there is substantial evidence in the record as a whole to support the Commission's finding that Rust-Ban 191 is a preservative to which 29 C.F.R. §:1915.-33(c)(1) applies.

We also sustain the Commission's decision that Rust-Ban 191 is a toxic preservative coating within the meaning of the cited standard. The Commission majority reasoned as follows:

(1) The Material Safety Data Sheet states that Rust-Ban 191 is a preservative containing 80% zinc with a TLV of 5mg./M $^3$. It prescribes the use of respirators, masks, and adequate ventilation whenever the product is used. OSHA's ship-repairing regulations require Bethlehem to keep informed of all information supplied in this document. 29 C.F.R. §§ 1915.57(b) and (c). Bethlehem is required to use the Material Safety Data Sheet to ascertain the potential hazards likely to be encountered in the use of Rust-Ban 191 and to take appropriate precautionary measures. 29 C.F.R. §§ 1915.57(a) and (b).

(2) 29 C.F.R. § 1915.31(c)(1) defines material containing zinc as being "of toxic significance." 29 C.F.R. § 1915.2(s), now codified at 29 C.F.R. § 1915.4(v), defines "hazardous materials" as having any of sev-

---

amount, 5 mg./M³, is commonly referred to as the threshold limit value or TLV for zinc oxide.

**6.** 29 C.F.R. § 1915.31(c)(1), now codified at Section 1915.51(d)(1), requires as follows:
   Welding, cutting or heating in any enclosed spaces aboard the vessel involving the metals

specified in this subparagraph shall be performed with either general mechanical or local exhaust ventilation meeting the requirements of paragraph (a) of this section: ... (i) Zinc-bearing base or filler metals or metals coated with zinc-bearing materials.

**1362**

en characteristics, including ". . . a threshold limit value . . . below 500mg./M³ for fumes. . . ."

(3) OSHA's ship-repairing standards at 29 C.F.R. § 1915.57(a) specifically incorporate the provisions of Section 1915.2(s) and put employers on notice that materials which have a TLV below 500mg./M³ are "hazardous:"

§ 1915.57 *Health and sanitation.*[7]

(a) No chemical product, such as a . . . preservative; [and] no structural material, such as . . . zinc coated steel . . . which is a hazardous material within the meaning of § 1915.2(s), shall be used until the employer has ascertained the potential fire, toxic, or reactivity hazards which are likely to be encountered in the handling, application, or utilization of such a material.

(4) Because 29 C.F.R. § 1910.1000(a)(2), Table Z–1 lists the low TLV for zinc oxide fumes as 5mg./M³, zinc oxide falls squarely within the Secretary's definition of a hazardous material and is clearly a toxic substance within the meaning of the ship-repairing standards, whether or not the actual production of fumes exceeds the TLV. Therefore, once the material, as here, is deemed to be toxic, the employer must implement the protective measures prescribed by 29 C.F.R. § 1915.33(c).

In interpreting the regulation in this case, the Commission majority thus rejected Bethlehem's contention that 29 C.F.R. § 1915.33(c) is triggered only when the level of zinc oxide exceeds its TLV of 5mg./M³. Under the Commission's view, the standard requires that, whenever Rust-Ban 191 is used, either the preservative coating be stripped to ensure that no zinc oxide is released at all, or that air-line respirators be utilized to protect employees from exposure to any zinc oxide fumes that may be created by the welding or burning operations. In so holding, the Commission stressed the preventive intent of the standard articulated in 29 C.F.R. § 1915.33(c).

We conclude that the Commission's decision is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, and therefore, should be sustained by this Court. *See* 5 U.S.C. § 706(2)(A). By its own terms the regulation does not limit its applicability to situations where the TLV has been exceeded and does not specify any level of air contaminants as necessary to trigger the worker protection requirements. The preventive intent of the regulation is compatible with the Congressional goal of assuring working men and women so far as possible safe and healthful working conditions. 29 U.S.C. § 651(b). We find that the interpretation of the regulation by the Secretary and the Commission is, therefore, entitled to deference by this Court. *Floyd S. Pike Electrical Contractor, Inc. v. Occupational Safety & Health Rev. Comm'n,* 576 F.2d 72, 75–76 (5th Cir.1978); *Wisconsin Electric Power Co. v. Occupational Safety & Health Rev. Comm'n,* 567 F.2d 735, 738 (7th Cir.1977); *Budd Co. v. Occupational Safety & Health Rev. Comm'n,* 513 F.2d 201, 204–205 (3d Cir.1975).

Our review of the record, furthermore, indicates that there is substantial evidence to support the Commission's finding that Bethlehem violated the Act by failing to take the protective measures required by 29 C.F.R. § 1915.33(c). It is undisputed that Bethlehem's employees were welding and burning in enclosed spaces on unstripped steel surfaces covered with Rust-Ban 191. The record demonstrates that these employees were not provided with air-line respirators. Based on these facts, there is substantial evidence to support the Commission's finding that Bethlehem violated the Act and the pertinent regulation.

### III.

For the foregoing reasons, the order of the Commission is affirmed.

AFFIRMED.

---

**7.** This regulation is now found at 29 C.F.R. § 1915.97.