737 F.2d 350
 11 O.S.H. Cas.(BNA) 1985, 1984-1985 O.S.H.D. ( 26,938
 PENNSYLVANIA POWER & LIGHT COMPANY, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond
J. Donovan, Secretary of Labor, U.S. Department of
Labor, Respondents.
 No. 83-3263.
 United States Court of Appeals,
Third Circuit.
 Argued March 7, 1984.
Decided June 15, 1984.
 
 Stephen C. Yohay (argued), Robert E. Williams, McGuiness & Williams, Washington, D.C., for petitioner.
 Robert L. Baum, Peter B. Kelsey, Edward H. Comer, William L. Fang, Washington, D.C., for amicus curiae Edison Elec. Institute.
 Domenique Kirchner (argued), Francis X. Lilly, Deputy Sol. of Labor, Frank A. White, Associate Sol., for Occupational Safety & Health, Dennis K. Kade, Counsel for Appellate Litigation, Washington, D.C., Marshall H. Harris, Regional Sol., U.S. Dept. of Labor, Philadelphia, Pa., for respondents.
 OPINION OF THE COURT
 Before HUNTER and BECKER, Circuit Judges, and HOFFMAN,* District Judge.
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 The Occupational Safety and Health Administration ("OSHA") issued a citation charging petitioner Pennsylvania Power & Light Company ("PP & L") with a serious violation of section 5(a)(2) of the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. Sec. 654(a)(2) (1976). OSHA charged that PP & L had failed to comply with the "grounding" regulations set forth at 29 C.F.R. Sec. 1926.955(a)(6)(ii) (1983), resulting in the death of a PP & L lineman. That citation was upheld by an Administrative Law Judge ("ALJ"), whose order was affirmed by the Occupational Safety and Health Review Commission ("the Commission"). PP & L now petitions this court, pursuant to section 11(a) of the Act, 29 U.S.C. Sec. 660(a) (1982), to review the Commission's final decision. Although we agree with respondent, the Secretary of Labor ("the Secretary"), that a PP & L employee violated the cited regulation and that PP & L's work rules did not precisely implement that regulation, we hold that the record does not contain substantial evidence to support a finding that PP & L failed to exercise reasonable diligence to discover and prevent employee violations of the OSHA standard. Accordingly, we will grant the petition for review and reverse the Commission's order.
 
 
 2
 * OSHA cited PP & L for irregularities at the work place which resulted in the electrocution death of Willard Hankee.[1] On May 18, 1979, Hankee served as the crew-leader of a three-man crew of PP & L first-class linemen. His crew was assigned to install a new utility pole in order to raise the sagging lines between two existing poles. Two days earlier Hankee had visited the job site with his immediate supervisor, the roving multi-crew foreman, for the purpose of discovering any safety problems and devising a work plan.
 
 
 3
 Hankee's crew, which included Louis Schwartz and Martin Gusick, arrived at the job site on the morning of May 18 with a "bucket truck" and a "digger line truck." The digger line truck was equipped with a mechanical boom that was operated from a platform at the rear of the truck. The truck boom was equipped with an auger that was to be used for digging the hole into which the new utility pole would be set. The boom could be used to lift the auger into position and to set utility poles and install equipment on them. The bucket truck at the job site was parked a short distance from the utility lines on which work was to be performed. That truck contained the equipment that the crew would use on the job.
 
 
 4
 Schwartz parked the digger line truck in a position that would facilitate digging a hole and setting a new pole. The rear of the truck faced the sagging lines. The digger truck's boom was positioned in a cradle above the cab of the truck. It would have been necessary to rotate the boom to the rear of the truck or to lift the boom in an overhead arc in order to position the auger for digging.
 
 
 5
 The topmost line of the four sagging lines was energized, conducting power at 7.2 kilovolts. Hankee and Schwartz agreed that it would be necessary to pull the energized line away from the digger truck and to secure the line out of the reach of the boom in order to perform their job safely. To that end Hankee directed Schwartz and Gusick to obtain fiberglass poles or "hot sticks" from the bucket truck to be used for "tagging out" the energized line and tying it down approximately fifteen feet from the site of the new pole.
 
 
 6
 Hankee was at the rear of the digger truck talking to the owner of the property abutting the job site when he dispatched Gusick and Schwartz to the bucket truck. Hankee knew that the hot sticks and rope were to be used to tag out the energized line, although the record does not reflect an express understanding that the boom would not be moved until the linemen returned with the equipment.
 
 
 7
 While Gusick and Schwartz were assembling the equipment at the bucket truck, the property owner called to them that their "buddy was down." The linemen rushed to the digger line truck. There they discovered Hankee lying on the ground at the rear of the truck. One foot remained on the platform from which the mechanical boom was operated. An arc of electricity passed from Hankee's foot to the ground. The boom of the truck was no longer in its cradle atop the cab; it had been swung around to the rear of the truck and now rested on the energized overhead line. Hankee died as a result of the accident.
 
 
 8
 The digger line truck had not been grounded prior to moving the boom, nor had the work area been barricaded. There is no evidence that the boom or controls malfunctioned on the day of Hankee's death.
 
 
 9
 OSHA investigated Hankee's electrocution death and issued a citation charging PP & L with two serious[2] violations of OSHA workplace regulations. The first item charged PP & L with failing to post a watchman at the job site when the boom was being moved, in violation of 29 C.F.R. Sec. 1926.550(a)(15)(iv) (1983). The second item charged PP & L with operating lifting equipment "near" an energized line without first grounding the lifting equipment or, as an alternative precaution, barricading the work area and complying with the regulations for working with energized equipment. The OSHA investigator identified 29 C.F.R. Sec. 1926.955(a)(6)(ii) (1983) [hereinafter referred to as section 955(a)(6)(ii) ] as the regulation governing the second item.
 
 
 10
 PP & L contested both charges. After a hearing the ALJ vacated the charge dealing with the absence of a watchman,[3] but determined that PP & L had committed a serious violation of section 955(a)(6)(ii). PP & L was fined $250.00. PP & L moved the ALJ to reopen the record to receive additional evidence that the interpretation of the "ground or barricade" regulation offered by the Secretary in this case was unworkable and inconsistent with prior interpretations of that regulation. The ALJ denied PP & L's motion. A panel of the Commission, with one commissioner dissenting, affirmed the ALJ's orders upholding the section 955(a)(6)(ii) citation and refusing to reopen the record. The case now comes before us on PP & L's petition for review.
 
 II
 
 11
 PP & L is charged with a serious violation of section 5(a)(2) of the Act. See supra ote 2. That section directs "[e]ach employer ... [to] comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. Sec. 654(a)(2) (1982). PP & L is charged with violating a regulation that dictates safety precautions in the electrical power industry when utilizing mechanical lifting devices in construction work on or with energized power lines.
 
 The cited regulation provides:
 
 12
 Overhead lines. (1) When working on or with overhead lines the provisions of paragraphs (a)(2) through (8) of this section shall be complied with in addition to other applicable provisions of this subpart.
 
 
 13
 ....
 
 
 14
 [ (6) ](ii) Lifting equipment shall be bonded to an effective ground or it shall be considered energized and barricaded when utilized near energized equipment or lines.
 
 
 15
 29 C.F.R. Sec. 1926.955(a) (1983) (emphasis added).
 
 
 16
 There is no dispute that Hankee failed to comply with section 955(a)(6)(ii). Whatever definition may be given to the term "near" in the regulation, in this case the boom of the digger line truck actually made contact with the overhead power line. Therefore, the literal terms of the regulation were clearly violated. We find no error in the Commission's additional determination that Hankee's conduct posed a substantial risk of death or serious injury, thus satisfying the initial requirement, under section 17(k) of the Act, for a finding that a serious violation occurred. See supra note 2.
 
 
 17
 The charge that PP & L committed a serious violation of section 5(a)(2) cannot stand, however, on a simple showing that a single employee failed to comply with a regulation. The Act does not impose strict liability on employers for isolated and idiosyncratic instances of employee misconduct. We have held that the purposes of the Act are best served by limiting citations for serious violations to conduct that could have been foreseen and prevented by employers with the exercise of reasonable diligence and care. Brennan v. OSHRC (Hanovia Lamp), 502 F.2d 946, 951-52 (3d Cir.1974).[4]
 
 
 18
 The Act itself provides the basis for our reasoning. The statement of congressional purpose contained in the Act evidences an intent to ensure worker safety only "so far as possible." 29 U.S.C. Sec. 651(b) (1982); see Hanovia Lamp, 502 F.2d at 951. "The duty was to be an achievable one." National Realty & Construction Co. v. OSHRC, 489 F.2d 1257, 1265-66 (D.C.Cir.1973). Thus, the Act should not be construed to impose a civil penalty without fault on an employer "for the results of idiosyncratic, demented, or perhaps suicidal self-exposure of employees to recognized hazards." Hanovia Lamp, 502 F.2d at 951. Moreover, section 17(k) of the Act specifies that an employer cannot be cited for a serious violation if the employer "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. Sec. 666(j) (1982). Therefore, although an employer must actively endeavor to keep its workplace free of recognized hazards and to comply with specific OSHA regulations, that duty does not extend to the abatement of dangers created by unforeseeable or unpreventable employee misconduct. The Commission has itself acknowledged that such a limitation on liability "provides employers with an incentive to take affirmative steps in instructing and training its employees as to the proper methods of complying with the requirements of the standards." Floyd S. Pike Electrical Contractor, Inc., 6 O.S.H.Cas. (BNA) 1675, 1677 (June 14, 1978).
 
 
 19
 PP & L asserts that the contested citation must be vacated because Willard Hankee's conduct on the morning of his death was both unforeseeable and unpreventable in light of PP & L's safety program and Hankee's own unblemished safety record. The ALJ rejected this contention below. He held that the Secretary had made out a prima facie case of employer knowledge by demonstrating that one of PP & L's supervisory employees, Hankee himself, was aware of the violative conduct. He then shifted the burden to PP & L to rebut the inference of employer knowledge by establishing "that it had done everything reasonably possible to avoid a violation." [App. at 623].[5] The ALJ further held that PP & L's "defense" of unpreventable employee misconduct failed because PP & L had not adequately implemented section 955(a)(6)(ii) in its work rules.[6]
 
 
 20
 Thus, by raising the issue of unforeseeable and unpreventable employee conduct, PP & L requires us to evaluate the Secretary's interpretation of section 955(a)(6)(ii) and to scrutinize PP & L's internal work rules and safety program. In the remainder of this opinion, we will first determine whether the Commission properly deferred to the Secretary's interpretation of section 955(a)(6)(ii) as applied to the facts of this case. We find that it did. Having reached that conclusion, however, we must determine whether the Commission properly allocated the burden of proving that Hankee's misconduct could have been foreseen and prevented through the exercise of reasonable diligence, and whether "substantial evidence on the record considered as a whole," see 29 U.S.C. Sec. 660(a) (1982), supports the citation of PP & L. We hold that the Commission erred by requiring PP & L to prove that Hankee's conduct was unpreventable, and we reverse the Commission's order.
 
 
 21
 A. The Definition of "Near" in Section 955(a)(6)(ii).
 
 
 22
 PP & L will prevail in this appeal if its safety rules correctly interpret section 955(a)(6)(ii), which requires grounding or barricading "near" energized overhead lines. See supra note 6. PP & L argues that its safety rule number 18.14 effectively implements section 955(a)(6)(ii). That safety rule provides:
 
 ON OR NEAR ENERGIZED EQUIPMENT
 
 23
 18.14 The minimum working clearances in the following table shall be observed by a workman between his body, limbs or any conductive object being handled and any exposed energized conductor and/or apparatus unless:
 
 
 24
 a. Approved rubber protective equipment has been applied as required in Section 21; or,
 
 
 25
 b. A barrier can be installed to permit working closer than the minimum clearances specified. Barriers shall be installed as required in Section 21, Rule 21.14, Rule 25.02(a).
 
 
 26
 [The following Table of minimum clearance distances is applicable to Rule 18.14.]
 
 
 27
 MINIMUM
VOLTAGE--KV CLEARANCE
 2.1 to 12 2 Feet
 23 3 Feet
 66 4 Feet
 110 & 138 5 Feet
 220 6.5 Feet
 500 13 Feet
 
 
 28
 [App. at 536-37]. In effect, PP & L's safety rule defines the term "near," as it is used in section 955(a)(6)(ii), as a minimum clearance distance of two feet when working with power lines energized at the voltage involved in this case.
 
 
 29
 PP & L contends that its safety rule embodies the most logical interpretation of the interrelated OSHA rules regulating the electrical power industry. Subpart V of 29 C.F.R. Chapter 1926 is entitled "Power Transmission and Distribution." That subpart includes section 955(a)(6)(ii), with its admonition to ground or barricade "near" energized overhead lines. Subpart V, however, also contains the following regulation which, by its express terms, applies to the use of the type of lifting equipment involved in this case:
 
 
 30
 Derrick trucks, cranes and other lifting equipment....
 
 
 31
 ....
 
 
 32
 [M]echanical equipment shall not be operated closer to any energized line or equipment than the clearances set forth in Sec. 1962.950(c) unless:
 
 
 33
 (i) an insulated barrier is installed between the energized part and the mechanical equipment, or
 
 
 34
 (ii) the mechanical equipment is grounded, or
 
 
 35
 (iii) the mechanical equipment is insulated, or
 
 
 36
 (iv) the mechanical equipment is considered as energized. (emphasis added)
 
 
 37
 29 C.F.R. Sec. 1926.952(c)(2) (1983) [hereinafter referred to as section 952(c)(2) ]. The clearance distance applicable under section 952(c)(2) is two feet, the same clearance prescribed by PP & L's safety rule 18.14. That distance is set forth in Table V-1 following 29 C.F.R. Sec. 1926.950(c) (1983).[7]
 
 
 38
 Thus, PP & L's safety rule 18.14 clearly satisfies section 952(c)(2). If the clearance distances in section 952(c)(2) can be used to define "near" for purposes of section 955(a)(6)(ii), then safety rule 18.14 also effectively implements the cited regulation. PP & L would then have made out its defense of unpreventable misconduct even under the Secretary's view of the parties' respective burdens of proof. PP & L argues that its safety rule is the most sensible interpretation of this morass of interrelated regulations.
 
 
 39
 The Secretary counters with the argument that section 955(a)(6)(ii) is a more narrow regulation designed to deal with the specific conduct at issue here: construction work on or with overhead lines. Giving section 955(a)(6)(ii) a narrower application than section 952(c)(2), the Secretary also seeks to give the term "near" a substantive meaning quite different from the clearance distances in Table V-1. He contends that lifting equipment is "near" an overhead line whenever the extended boom of the equipment is capable of reaching the power line.
 
 
 40
 In Wisconsin Electric Power Co. v. OSHRC, 567 F.2d 735 (7th Cir.1977), the United States Court of Appeals for the Seventh Circuit addressed the respective functions of sections 955(a)(6)(ii) and 952(c)(2). Confronted with a factual situation nearly identical to the present case, the Wisconsin Electric court held that section 955(a)(6)(ii), rather than section 952(c)(2), supplied the governing rule. The Seventh Circuit reasoned that section 955(a)(6)(ii) was the more specific and demanding rule. The more lenient clearance requirements of section 952(c)(2), the court explained, would come into play when lifting equipment is used for construction work other than work directly on or with overhead lines, or when mechanical equipment other than lifting equipment is used in construction work on or with overhead lines. 567 F.2d at 738. See 29 C.F.R. Sec. 1926.955(a)(5)(ii) (1983) ("Equipment and machinery operating adjacent to energized lines or equipment shall comply with Sec. 1926.952(c)(2).").
 
 
 41
 This case, however, presents the Wisconsin Electric issue in a slightly different fashion. PP & L concedes that section 955(a)(6)(ii) is the applicable regulation, but suggests that we look to section 952(c)(2) for the definition of "near." We agree with the result reached in Wisconsin Electric, and believe that the logic of that decision also requires that we reject PP & L's proffered interpretation of the interplay between the two regulations. Construction work "on or with" energized lines may present greater hazards than other types of construction work in the vicinity of overhead lines. It is therefore reasonable to argue, as the Secretary does, that safety measures are necessary when working directly on or with energized lines well before the minimum clearances in section 952(c)(2) have been reached. See Wisconsin Electric, 567 F.2d at 738. We will give controlling weight to the Commission's determination that the clearance distances in section 952(c)(2) are not synonymous with the term "near" in section 955(a)(6)(ii). See Budd Co. v. OSHRC, 513 F.2d 201, 205 (3d Cir.1975) (significant weight should be given to Commission's interpretation of OSHA regulations).[8]
 
 
 42
 B. Proof that Hankee's Misconduct was Reasonably Foreseeable and Preventable.
 
 
 43
 We do not believe, however, that the mere inability of PP & L to anticipate precisely the Secretary's interpretation of section 955(a)(6)(ii) should scuttle the company's claim that Hankee's death could not have been foreseen and prevented through the exercise of reasonable diligence. The Secretary bears the burden of proof with respect to every element of a violation of section 5(a)(2). See 29 C.F.R. Sec. 2200.73(a) (1983). The prevailing view among the circuits is that the employer's knowledge or ability to discover a violation is an element of the Secretary's case-in-chief. See, e.g., Brennan v. OSHRC (Alsea Lumber Co.), 511 F.2d 1139, 1142-43 (9th Cir.1975). This court has held that the Secretary bears the burden of proving foreseeability when the regulation at issue can be characterized as a general safety standard. Voegele Co. v. OSHRC, 625 F.2d 1075, 1079 (3d Cir.1980). The ALJ in this case correctly observed that the requirement to ground or barricade when working "near" overhead power lines is "phrased in general terms in order to permit employers the flexibility of developing reasonable work rules for protecting their employees under conditions peculiar to the employer's particular work situation." [App. at 625 n. 10]. The Secretary therefore bore the burden of proving that Hankee's failure to comply with section 955(a)(6)(ii) was foreseeable.
 
 
 44
 The Secretary seeks to discharge its burden of proving foreseeability by demonstrating that a PP & L supervisor violated the OSHA regulation. The Secretary would have us shift the burden to PP & L to rebut the inference of foreseeability by proving that Hankee's conduct was unpreventable. In cases where the Secretary proves that a company supervisor had knowledge of, or participated in, conduct violating the Act, we do not quarrel with the logic of requiring the company to come forward with some evidence that it has undertaken reasonable safety precautions. Cf. Danco Construction Co. v. OSHRC, 586 F.2d 1243, 1247 n. 6 (8th Cir.1978) ("[W]e do not find error in the Commission's determination that the employer must come forward with evidence to rebut this prima facie showing. After all, [the employer] is in the best position to demonstrate the sufficiency of its safety programs."). We do hold, however, that the Secretary may not shift to the employer the ultimate risk of non-persuasion in a case where the inference of employer knowledge is raised only by proof of a supervisor's misconduct.[9] The participation of the company's own supervisory personnel may be evidence that an employer could have foreseen and prevented a violation through the exercise of reasonable diligence, but it will not, standing alone, end the inquiry into foreseeability.
 
 
 45
 We are not required to remand this case for a proper allocation of the burden of proof, however, because we find no substantial evidence on the record that PP & L failed to exercise reasonable care to prevent violations of section 955(a)(6)(ii). See Bethlehem Steel Corp. v. OSHRC, 607 F.2d 871, 875 (3d Cir.1979); Ocean Electric Corp. v. Secretary of Labor, 594 F.2d 396, 403 (4th Cir.1979). The measure of reasonableness applied to an employer's efforts to foresee and prevent violations is not so rigid as the three-part test announced by the ALJ. See supra note 6. In Western Waterproofing Co. v. Marshall, 576 F.2d 139 (8th Cir.), cert. denied, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978), the court declared that an employer will be "excused from responsibility for acts of its supervisory employees" upon a showing "that the acts were contrary to a consistently enforced company policy, that the supervisors were adequately trained in safety matters, and that reasonable steps were taken to discover safety violations committed by its supervisors." Id. at 144.
 
 
 46
 The courts of appeals have consistently held that the adequacy of a company's safety program, broadly construed, is the key to determining whether an OSHA violation was reasonably foreseeable and preventable. Horne Plumbing & Heating Co. v. OSHRC, 528 F.2d 564, 569 (5th Cir.1976) (citing Brennan v. Butler Lime & Cement Co., 520 F.2d 1011, 1018 (7th Cir.1975)). In Capital Electric Line Builders, Inc. v. Marshall, 678 F.2d 128 (10th Cir.1982), the court held that the Secretary must shoulder the burden of proving that a violation of OSHA clearance regulations by electric line workers was preventable, even though a supervisor had participated in the violation. The burden could be discharged "by showing that the violation was foreseeable because of inadequacies in safety precautions, training of employees, or supervision." Id. at 130. Under the approach taken by these courts, a violation is not deemed "preventable" simply because the employer does not have a work rule that tracks the Secretary's interpretation of the governing regulation.
 
 
 47
 The Commission itself has applied a less exacting scrutiny to employers' safety programs in previous cases. In Marson Corp., 10 O.S.H.Cas. (BNA) 1660 (May 27, 1982), the Commission merely demanded proof that an employer "has established workrules designed to prevent the violation, has adequately communicated these rules to its employees, has taken steps to discover violations, and has effectively enforced the rules when violations have been discovered." Id. at 1662 (emphasis added). Applying the same standard in Jones & Laughlin Steel Corp., 10 O.S.H.Cas. (BNA) 1778 (June 25, 1982), the Commission cautioned the Secretary not to "overemphasize the formal aspects of [a company's] safety program and fail to give proper significance to its substance." Id. at 1782.
 
 
 48
 We agree with the logic of these circuit court opinions and Commission decisions. Employers should be encouraged to develop work rules that will reasonably respond to their particular working conditions and safety needs. An employer's safety rules should be evaluated with that end in mind, and not with a myopic view toward literal conformance with OSHA regulations. The goal of safety in the workplace can best be achieved if employers strive to implement OSHA regulations by developing simple and understandable rules, safety information, and training programs tailored to their respective operations. Indeed, if an employer merely duplicated and distributed all OSHA regulations applicable within its trade or industry, the result would likely be greater confusion and less workplace safety.
 
 
 49
 Applying the appropriate test to the record before us, we find no evidence that Willard Hankee's conduct was reasonably foreseeable to, or preventable by, PP & L. The ALJ made a specific finding that PP & L had demonstrated good faith in its efforts to comply with OSHA regulations and had developed an "excellent overall safety program." [App. at 626]. The few instances of lax enforcement of safety rules raised at the hearings were dismissed by the ALJ as having "little or no probative value because [they] relate[d] to incidents that occurred long before the instant accident." [App. at 626; see App. at 392, 413-14]. There was no evidence of prior citations enforced against PP & L.
 
 
 50
 We have previously outlined PP & L's efforts to implement section 955(a)(6)(ii) by complying with clearance rules that were somewhat more demanding, at most voltages, than those required by section 952(c)(2). See supra note 7. There is no evidence that safety rule 18.14, although technically deficient, was not promulgated in good faith. And safety rule 18.14 was not the only attempt by PP & L to impress upon its workers the importance of grounding equipment when working on or near energized lines. Safety rule 29.20 requires grounding the chassis of a truck once the task of setting and removing utility poles had begun. The record contains evidence that PP & L was swift to discipline employees who failed to comply with the company's grounding rules. [App. at 206-09, 210-11].
 
 
 51
 PP & L sponsors lineman training sessions and distributes technical information dealing specifically with the subject of grounding. [App. at 41-54, 61, 99-103, 104-05]. The company also devoted an entire Linemen's Bulletin to "Safe Grounding of Trucks." [App. at 88-94]. The Bulletin explains in simple language, but in great detail, the reasons for grounding a truck, the correct manner of grounding and the safety precautions, in addition to grounding, that should be taken when working with or near energized equipment. The Bulletin contains the very language of section 955(a)(6)(ii): "When used to work on or near energized facilities, the truck or equipment must be grounded for safety." [App. at 88].
 
 
 52
 The facts surrounding Hankee's death and the safety record of Willard Hankee support our holding that the citation of PP & L must be vacated. The uncontroverted evidence demonstrates that Hankee was an extremely safety-conscious supervisor with an unblemished safety record. [App. at 305; 560-61]. His crew members testified that they had never known him to operate a mechanical boom in the area of energized lines without first grounding the truck and stationing a watchman. [App. at 304; 306-07; 325-26; 329; 335-36]. Gusick and Schwartz fully expected that Hankee would not move the boom of the digger line truck until they had returned to "tag out" the energized line, even though Hankee had given no express instructions as to timing. [App. at 302-03; 563-64]. If the work plan had been carried out, the overhead line would not have been within the boom's reach during the pole setting operation. Hankee's departure from that safe course of conduct cannot be explained by any deficiencies in PP & L's safety program.
 
 
 53
 The Secretary maintains to the end that Hankee's death could have been prevented if PP & L had simply promulgated a work rule implementing the Secretary's interpretation of section 955(a)(6)(ii). We have rejected that literalistic approach to the employer's duty under the Act. PP & L made every effort to interpret the governing regulations reasonably and to implement them among its employees. We can understand the company's confusion when confronted with the task of transforming the applicable OSHA regulations into useful safety rules for its working linemen and supervisors.[10] We have previously reminded the Secretary of his statutory "responsibility to promulgate clear and unambiguous standards...." Bethlehem Steel Corp. v. OSHRC, 573 F.2d 157, 161 (3d Cir.1978). The Secretary has the option of promulgating specific standards defining the term "near" in various contexts if he is dissatisfied with the reasonable efforts of employers to enforce the current regulations. See Cape & Vineyard Division of New Bedford Gas & Edison Light Co. v. OSHRC, 512 F.2d 1148, 1155 (1st Cir.1975). On the record before us, we cannot fault PP & L's efforts to implement safe practices for employees working on or with energized power lines.
 
 IV
 
 54
 Accordingly, we will grant PP & L's petition for review, reverse the Commission's order and remand to the Commission with instructions to vacate the citation and penalty in this case.
 
 
 
 *
 Honorable Walter E. Hoffman, United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Many questions remain regarding the exact manner in which Hankee's death occurred. There is no dispute, however, as to the facts upon which the ALJ's opinion was based. Those facts are recounted in this section
 
 
 [2]
 Section 17(k) of the Act defines a serious violation as follows:
 For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
 29 U.S.C. Sec. 666(j) (1982) (emphasis added).
 
 
 [3]
 The dismissal of the first charge has not been contested by the Secretary and is not involved in this appeal
 
 
 [4]
 Hanovia Lamp involved a citation for a violation of the "general duty" clause of the Act, 29 U.S.C. Sec. 654(a)(1) (1982). We have recognized, however, that the reasoning of that decision applies with equal force to citations under Sec. 5(a)(2) for violations of specific regulations. Atlantic & Gulf Stevedores, Inc. v. OSHRC, 534 F.2d 541, 547 (3d Cir.1976)
 
 
 [5]
 The Commission approved the ALJ's allocation of the burden of proof. [App. at 694]
 
 
 [6]
 The ALJ set forth three elements required to prove that employee misconduct was not reasonably preventable:
 (1) the existence of work rules that effectively implement the cited standard;
 (2) effective communication of those work rules to employees; and
 (3) uniform and effective enforcement of those work rules.
 [App. at 623]. The ALJ examined the effectiveness of PP & L's program for communicating and enforcing its work rules in the context of his decision to reduce the fine suggested by the OSHA investigator. He found that PP & L had demonstrated an "excellent overall safety program." [App. at 626.] The Commission concurred. [App. at 696]. Thus, we conclude that PP & L would have prevailed below if it had satisfied the first element as well.
 
 
 [7]
 Table V-1 is designed to specify minimum safe working distances for construction work in the area of energized equipment. At every voltage greater than the one at issue in this case, PP & L's safety rule requires a larger clearance than the OSHA minimum in Table V-1
 
 
 [8]
 We also find no error in the refusal to reopen the record to receive evidence that the interpretation of Sec. 955(a)(6)(ii) adopted by the ALJ was not feasible in practice and would create a greater hazard than the interpretation championed by PP & L. The holdings of the ALJ and the Commission were quite narrow. While recognizing the breadth of the rule proposed by the Secretary in this litigation, each held only that a two-foot clearance rule, applied to the facts of this case, failed to implement Sec. 955(a)(6)(ii) effectively. [App. at 664, 695]. We are not required to decide whether the Secretary may properly interpret Sec. 955(a)(6)(ii) to require grounding or barricading any time the boom of a mechanical lifting device could possibly be extended to make contact with energized lines. Because PP & L sought only to demonstrate that the Secretary's rule would be unworkable and hazardous under circumstances not present in this case, the ALJ did not err in denying PP & L's motion
 
 
 [9]
 In so holding we join the federal courts of appeals that have previously addressed this issue. See Mountain States Tel. & Tel. v. OSHRC, 623 F.2d 155, 158 (10th Cir.1980); Ocean Elec. Corp. v. Secretary of Labor, 594 F.2d 396, 402-03 (4th Cir.1979); Horne Plumbing & Heating Co. v. OSHRC, 528 F.2d 564, 570-71 (5th Cir.1976)
 
 
 [10]
 Although the Wisconsin Electric court affirmed the Secretary's interpretation of the relationship between Secs. 955(a)(6)(ii) and 952(c)(2), it observed that "[r]evision of the regulations by any competent draftsman would greatly improve their clarity ...." 567 F.2d at 738 (emphasis added). We agree. The Seventh Circuit also upheld the regulations against a challenge of unconstitutional vagueness. Because we will vacate PP & L's citation on more narrow grounds, we need not address that contention here. Judge Becker, believing that the applicable regulations contain inconsistencies and confusing standards regarding safety measures which deprive employers and their employees of fair notice of what minimum standards OSHA expects them to satisfy, would reach the reserved question and vacate the citation and penalty on the grounds that the standards are unenforceable. Judge Becker endorses the reasoning of Judge Pell dissenting in Wisconsin Electric and more specifically his reference to the standards as a "paludal jungle" that are "impossibly vague, indefinite and confusingly juxtaposed" so as to deprive petitioner of its due process rights